**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amazon.com Incorporated, et al., | No. CV-23-02353-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Elly Infotech LLC, | |
| Defendant. | |

Pending before the Court is Defendant Elly Infotech LLC's ("Defendant") motion to set aside default. (Doc. 20.) For the following reasons, the motion is granted.

## BACKGROUND

On November 9, 2023, Plaintiffs initiated this action by filing the complaint. (Doc. 1.) The complaint alleges:

> [Defendant] and the call centers it works with[] are part of the scam ecosystem plaguing society. They target customers seeking assistance with activating Prime Video on their devices. Defendant['s] scheme begins with a misleading website that deceives customers into believing they are interacting directly with Amazon. Instead of activating the customer's device, the website presents a fake error message and prompts the customer with a phone number to resolve the (nonexistent) issue. Instead of calling Amazon, victims call Defendant[], who convince[s] victims that they need unnecessary—and nonexistent—Prime account 'upgrades' to receive the full benefits of Prime Video. Defendant[] then charge[s] victims hundreds of dollars each for these entirely fake services.

(*Id.* ¶ 3.)

On November 16, 2023, Defendant was served. (Doc. 12.) Thus, Defendant's deadline to respond to the complaint was December 7, 2023. Fed. R. Civ. P.

12(a)(1)(A)(i).  Defendant failed to respond by that deadline.

On January 18, 2024, Plaintiffs filed an application for entry of default.  (Doc. 13.)

On January 19, 2024, the Clerk entered default.  (Doc. 14.)

On January 25, 2024, Defendant appeared for the first time and attempted to file an answer.  (Docs. 15, 16.)

On January 26, 2024, the Court struck the answer because "Defendant must file a motion or stipulation to vacate the default entered against it before it can participate in this action."  (Doc. 19.)

On February 7, 2024, Defendant filed the pending motion to set aside default.  (Doc. 20.)

On February 21, 2024, Plaintiffs filed an opposition.  (Doc. 21.)

On February 28, 2024, Defendant filed a reply.  (Doc. 23.)

**DISCUSSION**

I.  Legal Standard

Under Rule 55(c) of the Federal Rules of Civil Procedure, the Court "may set aside an entry of default for good cause."  To determine whether good cause exists to vacate an entry of default, the Court considers the three *Falk* factors:[1] "(1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default."  *Falk v. Allen,* 739 F.2d 461, 463 (9th Cir. 1984).  "This standard, which is the same as is used to determine whether a default judgment should be set aside under Rule 60(b), is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default."  *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010).  "Crucially, however, judgment by default is a drastic step appropriate only in extreme circumstances;[2] a case should, whenever possible, be

---

[1]  Courts "consistently" refer to these factors as the "*Falk* factors."  *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1111 (9th Cir. 2011)

[2]  In *Mesle*, the Ninth Circuit faulted the district court for "omitt[ing] any mention of the 'extreme circumstances' requirement for judgment by default," which was "no minor omission," as "it fundamentally altered the standard, turning the court's attention to

decided on the merits." *Id.* (quotation marks omitted). The movant "bears the burden of proving the existence of a justification" to set aside the default. *Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir. 1988).

As for the first *Falk* factor, a plaintiff is prejudiced if his ability to pursue his claim has been "hindered" due to delay resulting in "tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001). "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *Id.* Furthermore, "merely being forced to litigate on the merits cannot be considered prejudicial." *Id.*

As for the second *Falk* factor, "[a] defendant seeking to vacate a default judgment must present specific facts that would constitute a defense," but "the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." *Mesle*, 615 F.3d at 1094. "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense"—the truth of those facts is "the subject of the later litigation." *Id.* Nevertheless, "conclusory statements" will not suffice, and a "mere general denial without facts to support it is not enough to justify vacating a default or default judgment." *Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004). "A complete lack of meritorious defenses itself constitutes an extreme circumstance." *United States v. Aguilar*, 782 F.3d 1101, 1107 (9th

everyday oversights rather than to whether there were any extreme circumstances." 615 F.3d at 1091. Nevertheless, the Ninth Circuit subsequently clarified that "[t]he 'extreme circumstances' policy language was intended to remind courts that default judgments are the exception, not the norm, and should be viewed with great suspicion," and courts should "keep this policy concern in mind," but courts are not required "in addition to applying [the] three [*Falk*] factors, to articulate why a particular case presents 'extreme circumstances.'" *United States v. Aguilar*, 782 F.3d 1101, 1106 (9th Cir. 2015). Rather, "faithful application of the *Falk* factors ensures that default judgments will stand only in extreme circumstances." *Id.* "For example, if a claimant has no meritorious defense . . . , then it is unclear what a further inquiry into 'extreme circumstances' would accomplish." *Id. See also Gregorian v. Izvestia*, 871 F.2d 1515, 1526 (9th Cir. 1989) ("'Extraordinary circumstances' analysis has in fact been supplanted by the three-part [*Falk*] test . . . . Therefore, the district court's determination that the case does not present 'extraordinary circumstances' does not support its refusal to set aside the default judgment under Rule 60(b)(6).").

Cir. 2015). Setting aside default "in the absence of some showing of a meritorious defense would cause needless delay and expense to the parties and court system." *Hawaii Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986). When the movant makes "no showing of a meritorious defense," it would be "an abuse of discretion to set aside the entry of default." *Id.*

As for the third *Falk* factor, "[a] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *Mesle*, 615 F.3d at 1092 (brackets omitted). "[I]n this context the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process." *Id.* (quotation marks omitted). A defendant is culpable "where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id.* "[S]imple carelessness is not sufficient to treat a negligent failure to reply as inexcusable, at least without a demonstration that other equitable factors, such as prejudice, weigh heavily in favor of denial of the motion to set aside a default." *Id.* However, "[w]hen considering a legally sophisticated party's culpability in a default, an understanding of the consequences of its actions *may* be assumed, and with it, intentionality." *Id.* at 1093 (emphasis added).[3] The Court "retains the discretion (but not the obligation) to infer intentionality from the actions of a legally sophisticated party and to thereby find culpability." *Idaho Golf Partners, Inc. v. Timberstone Mgmt. LLC*, 2015 WL 1481396, *4 (D. Idaho 2015). "A district court may exercise its discretion to deny

---

[3] The Ninth Circuit in *Mesle* noted that this "is not the ordinary standard for Rule 55(c) and 60(b) motions"—the standard which is "consistent with" the Supreme Court's decision in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 394-95 (1993), which held that "an inadvertent or negligent omission" could establish excusable neglect. 615 F.3d at 1092-93; *see also TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001), *as amended on denial of reh'g and reh'g en banc* (May 9, 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex. rel. Breiner*, 532 U.S. 141 (2001) ("To suppose that the making of a conscious choice, without more, precludes a finding that 'neglect' is 'excusable' cannot be squared with *Pioneer Investment*.").

- 4 -

relief to a defaulting defendant based solely upon a finding of defendant's culpability, but need not." *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 1112 (9th Cir. 2011). "[W]here the defendant has a meritorious defense and any prejudice can be cured," a court's finding that the defendant "acted culpably [does] not preclude it, as a matter of law" from granting relief under Rule 60(b)(1) or Rule 55(c). *Id.*

The decision whether to vacate the entry of default "is committed to the discretion of the district courts" and is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Brandt*, 653 F.3d at 1112. "The court's discretion is especially broad where, as here, it is entry of default that is being set aside, rather than a default judgment." *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945 (9th Cir. 1986). "[W]here timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits." *Schwab v. Bullock's Inc.*, 508 F.2d 353, 355 (9th Cir. 1974). The same reasoning applies—with at least as much force—to relief from entry of default. *Mendoza*, 783 F.2d at 945.

II.     The Parties' Arguments

Defendant contends there is good cause to set aside the default. (Doc. 20.) As for the first *Falk* factor, Defendant notes that it "acted quickly" to file a notice of appearance "only six days after the Clerk's Entry of Default" and contends that "[a]s a result of this slight delay, Plaintiff did not and will not suffer any undue delay or prejudice. (*Id.* ¶¶ 3-4.) As for the second *Falk* factor, Defendant contends it has at least four meritorious defenses: (1) it "ceased operations in December 2020"; (2) it "did not authorize anyone to use the name or operate, let alone take the actions alleged in Plaintiff's Complaint"; (3) "[a]n unknown third-party[] appears to have used the company name and is responsible for the purported wrongdoing set forth in Plaintiff's Complaint"; and (4) "Plaintiff has not made any allegation connecting [Defendant's] sole manager and member or the company to the alleged wrongdoing, other than that someone committed a scam using a free Gmail email address of ellyinfotech07@gmail.com and sent an invoice that says 'You paid $99.99

USD to ELLY INFOTECH.'"  (*Id.* ¶ 5.)  As for the third *Falk* factor, Defendant contends that it "acted diligently to attain counsel to defend this lawsuit" but "had trouble retaining counsel" until January 25, 2024, at which point its newly retained counsel quickly filed a notice of appearance.  (*Id.* ¶¶ 1-2.)  Defendant also submits an affidavit from Hemlata Rohira, its sole member and manager, in an attempt to substantiate these assertions.  (Doc. 20-1.)

Plaintiffs oppose the motion to set aside default.  (Doc. 21.)   Plaintiffs do not address the first *Falk* factor, implicitly conceding that setting aside the default would not result in any unfair prejudice.  As for the second *Falk* factor, Plaintiffs argue that the purported defenses identified in the motion are insufficient to qualify as "meritorious defenses" because one is premised on an unsupported assertion (*i.e.*, "[Defendant] speculates that '[a]n unknown third-party . . . used the company name' . . . [but] provides no support for this conclusion"), another is a purportedly meritless attack on the sufficiency of the allegations, and the others "amount to general denials" that are unaccompanied by an explanation of "how any one . . . is a meritorious defense for the causes of action pleaded in the complaint, particularly when the conduct alleged is not limited to after [Defendant's] claimed date of closing its operations."  (*Id.* at 6-8.)  As for the third *Falk* factor, Plaintiffs contend that although Defendant asserts that it acted diligently to find counsel after being served, that assertion is conclusory and contradicted by the parties' pre-default correspondence, which provides "little indication that Ms. Rohira was actively seeking counsel at that time."  (*Id.* at 8-9.)  Plaintiffs continue: "Contrary to [Defendant's] claim, the timeline indicates that Ms. Rohira did not seek counsel until after the Clerk's Entry of Default and then obtained counsel for [Defendant] after speaking with counsel for Amazon."  (*Id.* at 9.)

In reply, Defendant begins by addressing the third *Falk* factor.  (Doc. 23 at 3-6.)  Defendant contends that it is not a legally sophisticated party and "did not intentionally fail to answer."  (*Id.*)  As for the delay in responding to Plaintiffs' correspondence, Defendant attributes it to various factors, including Plaintiffs' transmission of the correspondence to

- 6 -

1 an email address that was infrequently checked and another that was defunct, possible
2 missed mail correspondence due to Defendant's move in February 2021, and Defendant's
3 initial suspicions over the legitimacy of the correspondence. (*Id.* at 4.) Defendant further
4 contends that, after it was formally served in mid-November 2023 but before retaining
5 counsel, "Ms. Rohira first contacted Plaintiffs' counsel in an attempt to hopefully resolve
6 the situation and have [Defendant] removed from this lawsuit, as it is not and has never
7 been involved in the fraudulent activities Plaintiffs' Complaint alleges against it"; that
8 "[u]nfortunately, Ms. Rohira's attempts to have [Defendant] removed from this lawsuit
9 were unsuccessful"; and that "[a]s soon as Ms. Rohira became aware of the entry of default
10 against [Defendant] she acted diligently to try and find counsel to represent it in this
11 lawsuit." (*Id.* at 4-5.) Turning to the second *Falk* factor, Defendant contends that it has
12 "alleged sufficient facts to show that it has a potentially meritorious defense":

> Specifically, [Defendant] ceased operations in December of 2020. The allegations of the Complaint occurred in 2021. How can it possibly be liable if it was not operating at the time of the allegations of the Complaint? More importantly, how can this not be a meritorious defense, as Plaintiffs' Opposition claims. Second, [Defendant] did not authorize anyone to use its name or operate on its behalf, let alone take the actions complained of in the Complaint. This fact rules out that it gave someone permission to use its name and engage in the conduct alleged in the Complaint. These facts represent . . . potentially meritorious defenses.

18 (*Id.* at 7-8.) Finally, turning to the first *Falk* factor, Defendant reiterates that Plaintiffs will
19 suffer no prejudice from setting aside the default in light of the short duration of the delay.
20 (*Id.* at 8-9.)
21    III.   Analysis
22        The Court agrees with Defendant that the default should be set aside.
23        As for the first *Falk* factor, the delay here was very short and has not, in any
24 meaningful way, prejudiced Plaintiffs' ability to litigate this case. Plaintiffs do not suggest
25 otherwise.
26        As for the second *Falk* factor, although the Court tends to agree with Plaintiffs that
27 some of the defenses identified in Defendant's motion papers are articulated with less than
28 ideal clarity, it is also important to note that the burden in this context "is not extraordinarily

heavy," *Mesle*, 615 F.3d at 1094, and that "doubt, if any, should be resolved in favor of the motion . . . so that cases may be decided on their merits." *Schwab*, 508 F.2d at 355. Here, the complaint attempts to link Defendant to the alleged scheme via allegations that, in October 2021, a victim who had been duped into paying a fictitious $99.99 "upgrade" fee received a PayPal receipt that identified the payee as "ELLY INFOTECH" and identified the payee's email address as ellyinfotech07@gmail.com. (Doc. 1 ¶¶ 28-30.) Defendant has, in turn, alleged that it ceased operations in December 2020, that it didn't authorize anyone to use its name or that email address, and that some "unknown third-party" may be the true culprit. Those allegations are sufficient to satisfy the second *Falk* factor. Although Plaintiffs criticize Defendant for "provid[ing] no support for" the allegation that an unknown third party may be responsible for the challenged conduct (Doc. 21 at 6), "[a]ll that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense"—the truth of those facts is "the subject of the later litigation." *Mesle*, 615 F.3d at 1094.

Turning to the third *Falk* factor, although Defendant's motion seems to imply that Defendant began searching for an attorney immediately after being served in November 2023 and simply encountered difficulty in retaining counsel during the ensuing search process—"[Defendant] acted diligently to attain counsel to defend this lawsuit, but was unable to do so timely. [Defendant] had trouble retaining counsel until January 25, 2024" (Doc. 20 ¶¶ 1-2)—Defendant's reply clarifies that Defendant did not begin attempting to locate an attorney upon being served. Instead, after being served, it appears that Ms. Rohira attempted, without legal representation, to persuade Plaintiffs to drop the lawsuit, then belatedly begin searching for an attorney in late January 2024 after the default was entered. (Doc. 23 at 5 ["As soon as Ms. Rohira became aware of the entry of default . . . she acted diligently to try and find counsel to represent it in this lawsuit."]; Doc. 23-1 ¶¶ 9-11.) It is difficult to see how such conduct could be characterized as diligent. Nevertheless, the Court is also satisfied that Defendant is not a legally sophisticated party and that Defendant's failure to file a timely answer was not "intentional" within the meaning of

Rule 55—instead, it was the product of a non-culpable misunderstanding of the consequences of Defendant's earlier inaction. *Mesle*, 615 F.3d at 1092 ("[I]n this context the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.") (quotation marks omitted). Thus, the third *Falk* factor also supports setting aside the default.

Accordingly,

**IT IS ORDERED** that Defendant's motion to set aside default (Doc. 20) is **granted**. Defendant shall, within 14 days of the issuance of this order, answer or otherwise respond to the complaint.

Dated this 6th day of March, 2024.

Dominic W. Lanza
United States District Judge